UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**KENTREAL JARBAR HOWARD** : **DOCKET NO. 2:21-cv-2276**
    **SECTION P**

**VERSUS** : **JUDGE JAMES D. CAIN, JR.**

**KEITH COOLEY** : **MAGISTRATE JUDGE KAY**

**REPORT AND RECOMMENDATION**

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Kentreal Jarbar Howard (Howard), filed through counsel. Howard is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Allen Correctional Center. The respondent filed an opposition to the petition (doc. 15), the petitioner, through counsel, filed a reply to the State's response (doc. 16). Petitioner also filed a *pro se* response (doc. 17). The petition is now ripe for review.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For reasons stated below, **IT IS RECOMMENDED** that all claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.
BACKGROUND

*A. Factual Background*

On April 1, 2015, petitioner Kentreal Howard, known as "Kenny Boo," was the driver of a vehicle stopped by two Terrebonne Parish Sheriff's Officers. *See State v. Howard*, 2018-0317 (La. App. 1 Cir 09/21/18), 258 So. 3d 66, 72. The passenger in the vehicle, Noel Durkins, provided

his driver's license to the officers, exited the vehicle as he was being questioned, but suddenly reentered the vehicle. *Id*. As the passenger door remained open, Durkins leaned in and grabbed a black bag that was partially unzipped out of the passenger compartment of the vehicle. *Id*. The officers removed Durkins from the vehicle and, as Durkins threw the bag on the ground, the zipper loosened and the bag landed at the back of the vehicle. *Id*. Durkins was handcuffed, at which time the other officer picked up the bag and placed it on the trunk of the vehicle. *Id*. at 73. Howard was instructed to step back was told he did not need to be concerned, as they had witnessed everything that happened regarding Durkins' actions. *Id*.

The officers observed the contents of the bag, which consisted of several clear baggies that contained rock-like and white powdery substances. *Id*. As the officer informed the Howard that he was going to be detained, Howard quickly grabbed the bag from the trunk and took flight. *Id*. Some of the contents fell out of the bag, and Howard was pursued on foot. *Id*. The officer testified that once Howard grabbed the bag from the back of the vehicle and fled, it immediately became apparent that he had knowledge of its contents and was directly involved in the transport and possible future sale and distribution of the contents of the bag. *Id*. at 75. The officer pursuing petitioner ultimately deployed a taser to the petitioner's upper back, momentarily affecting him, but he was able to escape, regain his footing, and flee on foot. *Id*. At that point, the officer recovered the bag from the ground and picked up the individual baggies of rock-like and a white powdery substance that had fallen along the trail from the trunk to the side of the store as the defendant escaped. Id.

### B. *Conviction*

The petitioner was ultimately convicted on January 12, 2017, on one count of Possession with Intent to Distribute Schedule II narcotics, in violation of La. R.S. 40:967(A)(1), and

subsequently sentenced by the 32nd Judicial Court, Terrebonne Parish, to thirty years at hard labor. Doc. 1, pp. 1-2.

### C. Direct Appeal

Petitioner timely filed one counseled and two pro se briefs on direct appeal in the Louisiana Third Circuit Court of Appeal. *State v. Howard*, 2018-0317 (La. App. 1 Cir 09/21/18), 258 So. 3d 66. In his counseled brief, he assigned error to the denial of his motion for continuance to appoint a sanity commission, the sufficiency of the evidence, and the habitual offender adjudication. In his pro se briefs, he argued that his constitutional rights were violated due to the inability to confront a witness, challenged the constitutionality of the search and seizure and other challenges to the admission of evidence, asserted that the State committed a *Brady* violation and prosecutorial misconduct, and finally, he alleged insufficient evidence. The First Circuit affirmed the habitual offender adjudication, the conviction and sentence. *Id.* His subsequent supervisory writ to the Louisiana Supreme Court was denied on May 6, 2019. *State v. Howard*, 2018-1650 (La. 05/6/19), 269 So.3d 692.

### D. State Collateral Review

Petitioner's original Application for Post-Conviction Relief was filed on November 20, 2019, and supplemented June 1, 2020. See doc. 1, att. 9, p. 4. On September 22, 2020, the following claims were denied on the merits and because they were repetitive and fully litigated on appeal: "1) denial of his motion for continuance to appoint sanity commission; 2) insufficient evidence; 3) habitual offender adjudication; 4) violation of his Sixth Amendment Constitutional right of confrontation; 5) Fourth Amendment unreasonable search and seizure; 6) inadmissible evidence due to insufficient chain of custody; 7) inadmissible evidence due to conflicting weight of the drugs; 8) alleged *Brady* violation resulting from the conflict is the weight of evidence shown

on the crime lab report and the amount alleged in Agent Renfro's affidavit in support of arrest warrant; and 9) prosecutorial misconduct as a result of remarks in opening and closing statements. Doc. 1, att. 9, pp. 2-13.  The following claims were denied on the merits: 1) newly discovered *Brady* evidence; 2) ineffective assistance of counsel; and 3) unconstitutional non-unanimous jury verdict.  *Id*.  On February 1, 2021, the First Circuit denied Howard's writ application (doc.1, att. 11, p. 3) and on May 11, 2021, the Louisiana Supreme Court denied his application for supervisory writs (doc. 1, att. 12, pp. 2-4; *State v. Joseph*, 2020-00005 (La. 09/08/20), 301 So.3d 27).

### E.  Federal Habeas Petition

The instant petition was filed in this court on August 2, 2021, and raises the following issues: 1) ineffective assistance of counsel due to counsel's distraction during the trial; 2) ineffective assistance of counsel in failing to investigate and interview material witnesses; 3) ineffective assistance of counsel in failing to properly investigate; 4) ineffective assistance of counsel in failing to request a mistrial; and 5) prosecutorial misconduct.  Doc. 1.

## II.
## LAW & ANALYSIS

### A.  Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. *Exhaustion and Procedural Default*

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore, we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

#### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order

to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be

required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. *General Principles*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

To overcome AEDPA's relitigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 962 F.3d 145, 155 (5th Cir. 2019). As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.*; 28 U.S.C. § 2254(d)(1).

The first exception to the relitigation bar—the "contrary to" prong—is generally regarded as the narrower of the two. *Id.* A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if" it resolves "a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. (*citing Terry Williams v. Taylor,* 120 S.Ct. 1495, 1523 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id*. at 156. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id*.; *see also, Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (*citing Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotation omitted). In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id. (citing Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); see *also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (asking "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's relitigation bar is necessary, but not sufficient, to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id. (citing Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v.*

*Thompkins*, 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.
#### LEGAL ANALYSIS

#### A. Timeliness

Howard's conviction became final on August 4, 2019, when his 90-day window for seeking review in the United States Supreme Court expired. *Roberts v. Cockrell*, 319 F.3d 690, 693-695 (5th Cir. 2003). Accordingly, **108 days** accrued against § 2244(d)'s one year limitations period before he filed his application for post-conviction relief in the trial court on November 20, 2019. The limitations period was then tolled until the Louisiana Supreme Court's decision on May 11, 2021, and an additional **83 days** accrued against the one-year limit before Howard filed his federal habeas petition on August 2, 2021. Therefore, a total of **191 days** has accrued against the one-year limit and the matter is timely.

#### B. Exhaustion and Procedural Default

Finding that the application was timely, we next apply the doctrines of exhaustion of state court remedies and procedural default in order to determine whether we can proceed to the merits of the claim. Upon our review of the appellate record, we find that he properly sought review on all claims before this Court on habeas review. He has therefore exhausted his state court remedies. In addressing the merits of the claim now raised in his federal habeas petition, the state court found no procedural defects and denied the claim on the merits. Therefore, we find no grounds for procedural default.

### C. Merits Consideration

#### 1. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 2065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

### *a. Counsel was distracted*

Howard first argues that his counsel was ineffective because he was "distracted." Doc. 1, p. 3. Before the jury venire, he requested a continuance because he was "very distracted as a result of his daughter having just been born." *Id*. Petitioner asserts that his attorney told the court that he was not in a good position to try the case and he requested a short time to prepare. *Id*. The trial court denied the continuance.

On direct appeal, the appellate court found that there was no abuse of discretion by the trial court in denying the defense counsel's motion for continuance. *State v. Howard*, 258 So.3d at 78-79. In his application for post-conviction relief, Howard alleged that his counsel was ineffective for being distracted. Doc. 19, att. 3, p. 115. In its written reasons for denial of the application, the trial court stated "Defendant has listed fifteen (15) alleged examples of defense counsel's actions/inactions to support his claim. Most are unsupported factually or have already been addressed on appeal." *Id*. at p. 77. In his application for habeas review presently before this Court, Howard does not state how these rulings from the state courts are an "unreasonable application of federal law" nor does he cite any controlling federal law or cases which contradict the Louisiana Supreme Court's opinion.

### *b. Failure to investigate and interview material witnesses*

Petitioner argues that his counsel was ineffective for failing to investigate and interview a material witness, Noel Durkins, the passenger in the vehicle who dropped the black bag containing cocaine when he exited. Doc. 1, p. 4. This issue was raised in Howard's application for postconviction relief. In his written reasons for judgment, the trial court stated, "Competent defense counsel knows that calling a witness who was in the vehicle with another defendant a 'high risk' tactic because other inculpatory evidence could be elicited from the witness which

-11-

would not have been proved otherwise." Doc. 1, att. 9, p. 12. The court went on to discuss the fact that a decision to call certain witnesses is a matter of trial strategy. Such trial strategy decisions do not establish ineffective assistance of counsel. The trial court concluded that Howard failed to show either prejudice or that the counsel's performance was deficient. *Id*. Applying the deferential standard of review under the AEDPA, Howard has failed to state in his habeas petition how the state court's ruling was an unreasonable application of federal law..

### c. *Failure to properly investigate and discovery the discrepancies between weight of the cocaine*

Petitioner next alleges that his counsel failed to sufficiently investigate the district attorney's "open file" discovery to find the discrepancy between the arresting officer's seizure of 51.7 grams of a "suspected substance" from Noel Durkin at the scene of the arrest and the crime lab analysis report of 34.86 grams of crack cocaine. Doc. 1, p. 4. The issue of the conflicting evidence of the weight of the drugs was first raised on direct appeal, at which time the appellate court found that the evidence was admitted without objection by defense counsel thus, Petitioner was precluded from raising it on appeal. *State v. Howard,* 2018-0317 ( La. App. 1 Cir 09/21/18), 258 So. 3d 66, 81. However, the Court noted that the law enforcement officers were subject to cross-examination regarding the weight of the drugs and the jury was free to accept or reject that testimony. *Id*. The court also pointed out that as the statute was written at the time of the crime, there was no difference in punishment based on the weight of the controlled dangerous substance. *Id*.

In his application for post-conviction relief, the Petitioner raised the claim that his counsel was ineffective in failing to object to this evidence. The trial court found that this claim had been addressed on appeal and thus, did not support a claim for post-conviction relief. Doc. 1, att. 9, p.

11. Howard has failed to state in his habeas petition how the state court's ruling was an unreasonable application of federal law.

### d. Failure to request a mistrial

Next Petitioner argues that his defense counsel was ineffective for failing to object to the prosecutor's closing statements to the jury that the co-defendant, Durkins, pled guilty when the state had not presented any evidence to support this statement. Howard alleges that this comment "tainted the jury by influencing them and implicating that the petitioner was guilty by association" and denied him his "right to a fair trial and from a presumption of innocence." Doc. 1, p. 5. On direct appeal, Petitioner raised the claim of prosecutorial misconduct based on the prosecutor's reference to Noel Durkins' guilty plea to possession with intent to distribute cocaine before stating, "Great. Fantastic. We got one of the two drug dealers in this case off the street." *State v. Howard*, 258 So.3d at 85. The appellate court held:

> The trial court in the instant case instructed the jury that opening statements and closing arguments are not evidence. The trial court further stated, "You must determine whether or not a fact has been proven only from the evidence presented or from a lack of evidence...As jurors, you alone shall determine the weight and credibility of the evidence." Much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed by the trial judge that arguments of counsel are not evidence. *State v. Mitchell*, 16-0834, p. 8 (La. App. 1st Cir. 9/21/17), 231 So. 3d 710, 719.
>
> The comments referred to in the defendant's pro se brief are not outside the proper scope of opening statement or closing argument. Even if we were to find them outside of the proper scope of opening statement or closing argument, no relief premised on such comments would be warranted. The defendant was convicted based on substantial testimonial and video evidence that supported the finding by the trier of fact that the State proved every element of the offense beyond a reasonable doubt. It does not appear that any prosecutorial comments contributed to the verdict. Further, we fail to find any "plain error" as claimed by the defendant. We are unable to find that the prosecutor's opening statement and/or the lack of an objection or motion for mistrial by trial counsel infringed [Pg 26] upon the defendant's

>right to a fair trial. Thus, assignment of error number three of pro se brief two is without merit.

*Id.*

The State argues, and the Court agrees, that because the direct claim of improper closing statements has no merit, Howard cannot prove that his counsel was deficient for failing to object and he cannot prove that he was prejudiced in any way. Moreover, Howard has not asserted any grounds for prejudice other than the bare allegation that the comment "tainted" the jury. Howard has not cited any federal law or jurisprudence that the state courts have unreasonably applied to this case.

### e. *Failure to investigate prior drug court participation*

In his final claim regarding ineffective assistance of counsel, Howard alleges that his counsel failed to investigate his prior Drug Court participation and should have objected to the judge hearing this case as he was the Drug Court judge. Doc. 1, p. 6. He asserts, without any statement of fats, that the judge had a conflict of interest and was biased and prejudiced against him. In denying this claim on post-conviction, the trial court found "simply no basis for these claims legally or factually." Doc. 1, att. 9, p. 11. Again, Howard has not stated any facts to support this bare allegation of bias and prejudice, nor has he stated any federal law which the state court applied unreasonably. As none of his claims of ineffective assistance of counsel have merit, Petitioner is not entitled to habeas corpus relief on these claims.

### 2. *Prosecutorial Misconduct*

Howard alleges that the prosecutor "intentionally misrepresented" the crime lab report as being the report which analyzed the substance found at the scene and asserts that the discrepancy in the weight of the substance shows misconduct by the prosecutor. Doc. 1, pp. 6-7. He claims that he raised this issue on direct appeal and on through his application for post-conviction relief.

*Id*. While it is unclear whether or not Petitioner actually raised this specific claim in the highest court of the state, the conflicting evidence of the weight of the drugs was, in fact, addressed and dismissed by the appellate court, as discussed above.

Howard has failed to state in his habeas petition how the state court's ruling was an unreasonable application of federal law and, as such, he is not entitled to habeas corpus relief on this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth

arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 11th day of October, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE